(161 App. Div. 230)

### SOMERS v. HARRIS.

(Supreme Court, Appellate Division, Third Department. March 13, 1914.)

1. PARTNERSHIP (§ 327*)—DISSOLUTION—ACCOUNTING—GOOD WILL—PLEADING AND PROOF.

    In proceedings for the dissolution of a partnership, plaintiff alleged that the assets, exclusive of such sums as might be found due from defendant, were of the value of about $274,257.56, and consisted of "securities, cash in bank, bills receivable, and office furniture"; that the liabilities, exclusive of any liabilities which might be found due from the firm to plaintiff, amounted to about $58,223.40, etc. The complaint prayed that the partnership be dissolved, that a receiver be appointed, with power to dispose of the same and collect the debts for the benefit of the parties, and that an accounting be had and the proceeds of the assets divided after payment of debts, etc. The answer denied defendant's knowledge of the value of the assets or the extent of the liabilities, and joined in asking that the firm be dissolved, and that an accounting be had and the assets divided. Held, that the pleadings did not present an issue as to plaintiff's right to recover from defendant the alleged good will of the business on the theory that, after the dissolution of the firm, defendant had appropriated such good will by taking over the New York office and organizing a corporation to operate it.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 769–778; Dec. Dig. § 327.*]

2. PARTNERSHIP (§ 310*)—DISSOLUTION—ACCOUNTING—GOOD WILL.

    Plaintiff and defendant for many years prior to January 1, 1911, had operated a large and successful wholesale coal business as a firm under

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the name of H. & Co., with main office in Albany, where the records were kept, and branch offices in New York and Pittsburg. Plaintiff had, for several years prior to dissolution of the firm, exclusive charge of the Albany office, was advertised on the firm's stationery as a member of the firm, and was in close touch with its customers. On dissolution plaintiff retained the Albany office and the business connected therewith, the Pittsburg office was discontinued, and defendant organized a corporation composed of himself and his sons under the name of H. & Co. to operate the New York office. *Held*, that such facts did not warrant a finding that defendant had thereby appropriated any part of the good will of the old firm so as to render him liable to account therefor to the firm's receiver in dissolution.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 712; Dec. Dig. § 310.*]

Appeal from Trial and Special Term, Washington County.

Action by Henry W. Somers against George D. Harris. From a judgment in partnership dissolution proceedings, directing defendant to pay to the receiver of the firm $54,201.85 as the value of the good will of the partnership, and from an order granting plaintiff an extra allowance of costs, defendant appeals. Reversed and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Louis H. Rowe, of New York City (Charles F. Brown and Grant C. Fox, both of New York City, of counsel), for appellant.

Edgar T. Brackett, of Saratoga Springs, for respondent.

WOODWARD, J. [1] The complaint in this action alleges: That the plaintiff and defendant entered into a copartnership in the year 1887, under the firm name and style of "Geo. D. Harris & Co.," for the purpose of engaging in the business of buying and selling coal, under an agreement which provided that the partners should co-operate in carrying on the business, and should divide the net profits upon the basis of four-ninths to the plaintiff and five-ninths to the defendant, and that upon a dissolution of the said partnership, after the payment of liabilities, the assets should be divided between them upon the same basis. That the plaintiff and defendant continued this arrangement until about the 1st day of January, 1903, when the defendant, over the protest of the plaintiff, ceased to co-operate in the management of the business, and he—

"did not thereafter materially assist in the conduct thereof. That the plaintiff continued to manage and conduct said business until on or about the 1st day of January, 1911, when, by the agreement of the parties, the said partnership was terminated. That at the time of the termination of the partnership, as above stated, the assets of the partnership, exclusive of such sums as may be found due it from the defendant, were of the value of about $274,-257.56, and consisted of securities, cash in bank, bills receivable, and office furniture. That at that time the partnership liabilities, exclusive of any liabilities which may be found due from it to the plaintiff, amounted to about the sum of $58,223.40; that since the termination of the partnership as above stated, and prior to the commencement of this action, all the liabilities of said partnership, except such as may be found due from it to the plaintiff, have been paid, the defendant has received assets of said partnership of the value

of $98,612.18, and the plaintiff has received assets of said partnership of the value of $50,368.13. That there remain undistributed, besides such sums as may be found due it from the defendant, assets of said partnership of the value of about $31,000, consisting of about $26,000 cash in bank, and office furniture, and accounts receivable of the value of about $5,000, and an accounting is necessary to state and settle the affairs of said partnership, and to ascertain accurately the interests of the parties. That the plaintiff's interest in the remaining assets of said partnership is of the value of more than $25,000, and the defendant's interest in the remaining assets of said partnership is of the value of less than $6,000."

The relief demanded, so far as it has any bearing upon the questions here involved, was that the—

"partnership be adjudged dissolved; that a receiver of the property of said partnership be appointed, with power to dispose of the same, and to collect all debts for the benefit of all parties entitled thereto; that an accounting be had of the partnership affairs; that the proceeds of the partnership assets be divided, after the payment of all just debts of said partnership, and the costs of this action and of such receivership, between the parties hereto, according to their respective rights."

The answer substantially admits the allegations in reference to the organization of the partnership, though putting it in the form of a denial; denies that the defendant ceased to co-operate in the conduct of the business between the years 1903 and 1911, and admits that the partnership was continued down to about the 1st day of January, 1911, "at which time said partnership was terminated by agreement between the parties"; denies that he has knowledge or information sufficient to form a belief as to the value of the assets, or the extent of the liabilities of the firm at the time of the dissolution; denies knowledge or information sufficient to form a belief as to the amount of the assets which the defendant or the plaintiff has received since the dissolution of the partnership, but admits that both have received some portion of the assets; and denies in a like manner knowledge of the amount of the assets due to the plaintiff or to the defendant. The defendant then joins in asking that the partnership be adjudged dissolved, that an accounting be had of the partnership affairs, and that the proceeds of the partnership assets be divided in the manner asked for by the plaintiff.

Where is the justification, under these pleadings, for finding that the defendant owes to the receiver of this copartnership the sum of $54,201.85 for the alleged good will of such partnership? The principle still remains that the judgment to be rendered by any court must be secundum allegata et probata; and this rule cannot be departed from without inextricable confusion and uncertainty and mischief in the administration of justice. Parties go to court to try the issues made by the pleadings, and courts have no right impromptu to make new issues for them, on the trial, to their surprise or prejudice, or found judgments on grounds not put in issue and distinctly and fairly litigated. Wright v. Delafield, 25 N. Y. 266, 270. The complaint alleges that, at the time of the termination of the partnership on the 1st day of January, 1911, "the assets of the partnership, exclusive of such sums as may be found due it from the defendant, were of the value of about $274,257.56, and consisted of securities, cash in bank, bills re-

ceivable and office furniture," and the express mention of these items excludes the idea that the assets consisted of anything other or different from those mentioned, under the well-known maxim of "Expressio unius est exclusio alterius" (Aultman & Taylor Co. v. Syme, 163 N. Y. 54, 57, 57 N. E. 168, 79 Am. St. Rep. 565), or that they were substantially in excess of the amount named. Certainly up to the time of the dissolution of the partnership the defendant had taken no part of the good will. It is true that he had organized a corporation on the 22d day of December, 1910, for the purpose of dealing in coal, but the undisputed evidence is that this corporation did not commence doing business until the 1st day of January, 1911, at which time the plaintiff alleges, and the defendant admits, that "by the agreement of the parties the said partnership was terminated." It follows, therefore, that the clause of the complaint which declares the assets "exclusive of such sums as may be found due it from the defendant" cannot be construed as an allegation that there was anything due from him as for good will on the 1st day of January, 1911, for at that time, whatever of assets there were were in the custody and control of the partnership, the defendant had taken none of them away, nor had he appropriated any element of good will. The only fair and honest construction of the complaint is that it alleges that the assets of the partnership at the time of dissolution were "of the value of about $274,257.56, and consisted of securities, cash in bank, bills receivable and office furniture," and such other amounts as the defendant might be found to be owing the partnership upon an accounting not for good will, but for any sums which he might have withdrawn, and which were not included in the account. Indeed, it practically appears from the record that the plaintiff did not contemplate that his action involved any question of good will, for the learned trial court, in its findings of fact, finds that "the plaintiff did not know that he had any rights with respect to the good will of the partnership of Geo. D. Harris & Co. until in or about the month of January, 1913," and the complaint is verified on the 7th day of January, 1913, and makes no mention of the alleged good will, or of its constituting any part of the assets of the partnership, and the defendant, testifying upon the trial of the action on the 20th day of March, 1913, being asked when he first heard of the question of good will being raised, replied: "Very recently. I think it was day before yesterday, in fact."

Clearly the defendant in this action was not called upon to account for anything more than the assets of the partnership at the date of dissolution. Whatever the partnership owned at that time constituted the assets, and the plaintiff elected to say in his verified complaint that those assets, "exclusive of such sums as may be found due it from the defendant," were of the value of about $274,257.56, and consisted of securities, cash in bank, bills receivable, and office furniture; and, without any amendment of the pleadings, so far as we can discover, he has a judgment against the defendant for the sum of $54,201.85, besides several items of costs and extra allowances, and this principal item is made up of an alleged asset which was not even hinted at in the complaint, and which is arrived at by finding the alleged annual

profits of the copartnership for the last five years of its existence at $10,840.37, and then multiplying this by five. In other words, the learned court finds, entirely outside of the pleadings, that the good will of this partnership, which was unknown to the plaintiff from the 1st day of January, 1911 (although at about that time he consulted counsel in reference to the dissolution of the same), down to the month of January, 1913, is worth the average annual profits of the business for a period of five years. Of course, if the plaintiff were an infant, a court of equity might owe an obligation to inform him of his rights, but we are at a loss to understand how it can be held that a mature business man, at the close of a partnership extending from 1887 to 1911, can come into a court of equity, after two years of acquiescence, and procure an accounting for assets which he never claimed to have an interest in until after his complaint was served and issues were joined. It is entirely evident that the defendant had no intimation from the complaint that he was sought to be charged with the alleged value of any good will of the partnership; the language did not suggest it, and the defendant's answer, asking the identical relief sought by the plaintiff, aside from the appointment of a receiver, indicates clearly that no such issue was understood to be tendered; it involved, under any fair reading, a demand for an accounting of the assets of the copartnership, consisting "of securities, cash in bank, bills receivable and office furniture," and the court, after counsel have rummaged the past, has gathered up an entirely new asset, and has charged the defendant with having confiscated that to his own purposes, thus impromptu making new issues to the surprise and prejudice of the defendant. Modern thought has gone far in the direction of paternalism, but the courts have, as a rule, been content to let full-grown and experienced business men make their own business arrangements and abide by them.

[2] But, assuming that the pleadings might be deemed to have been amended to conform to the proofs in support of the judgment, is there anything in the evidence fairly tending to support the judgment? Putting aside as entirely technical the fact that the alleged good will was taken, if at all, by the corporation known as "Geo. D. Harris & Co." rather than by the defendant, and not until after the copartnership of "Geo. D. Harris & Co." had been dissolved, we will consider the evidence in the light of the complaint, and discover, if we may, if there was in fact any survival of this so-called good will for which the defendant may be properly charged upon an accounting of the copartnership of Geo. D. Harris & Co. It will be conceded that the firm of Geo. D. Harris & Co. had established a good reputation in the wholesale coal trade, and it will be assumed that this good reputation had a certain good-will value to the firm as a going concern, and which it would have been the duty of a surviving partner to account for had one of them died during the continuance of the partnership. The firm had offices at Albany, at Pittsburg, and New York, and it had traveling salesmen on the road, and it solicited business by telegraph, telephone, and mail, and, while it is in evidence that few of the customers visited the Albany office, and that a considerable number did call at the New

York office, there is not a particle of evidence that the customers calling at the New York office added materially to the volume of the business, and it was probably due to the fact that more wholesale coal dealers throughout the country drop into New York than do into Albany, and that they would very naturally call at the office of the company with which they were doing business, though they might not have any immediate business to transact, which accounts for this fact appearing in the record. Indeed, it is conceded that the fact of the location of the company's office in the city of New York, at a particular location, is not, in view of the character of the business being carried on, and which did not require the display of goods, of any great importance, and the evidence wholly fails to disclose either that the New York office commanded a profitable share of the company's business, or that the Albany office did not have all of the names of the customers, and all of the facilities for doing business which were available to the New York office. In fact it is in evidence that the Albany office was the record office, and that it had been in operation for a period of five years before the New York office was opened, and this office had all the time been in the direct charge of the plaintiff, so that he had the key to the businesss, as it were; and, while he testified that there was no such person as Henry W. Somers known in the coal trade, and the learned trial court has found as facts that "the plaintiff, when he commenced business as Henry W. Somers, was without credit in the coal trade," and that "no such person as Henry W. Somers was known in the coal trade," we are of the opinion that the plaintiff's pleadings and evidence do not warrant any such conclusions.

The plaintiff alleges in his complaint that "on or about the 1st day of January, 1903," the defendant "over the protest of the plaintiff, ceased to co-operate in the management of the business, and he did not thereafter materially assist in the conduct thereof; that the plaintiff continued to manage and conduct said business until on or about the 1st day of January, 1911, when by the agreement of the parties the said partnership was terminated." The plaintiff admitted on his direct examination that his name appeared upon the corner of the stationery as one of the members of the firm of Geo. D. Harris & Co., and such name appears upon the printed letter heads submitted to the court; he claims to have had the management and conduct of the business from 1903 to 1911; that he was in charge both of the New York and the Albany offices a greater part of the time after the defendant took up his residence in New York in 1900, and for this man to say that he was unknown in the coal trade, that he was without credit in the coal trade, after all these years of active management of a business which had established the high reputation which is claimed for Geo. D. Harris & Co. is absurd. Geo. D. Harris & Co. held out to the world as the members of that firm Geo. D. Harris and H. W. Somers; these were the names appearing at the opposite corners of the stationery directly over the firm name. No other names appeared, and the only intelligent understanding of the stationery used is that these two men constituted the firm of Geo. D. Harris & Co., and the clearly identified "Co." of the partnership cannot be heard to say that he had no

standing in the coal business, except in the most highly technical sense. He had for years been coming into direct personal contact with the trade. Taking his own version for it, he was much closer to the developing business of the firm than his partner; he was the man who managed and conducted the business from 1903 to 1911. His stationery was announcing to every one of his customers that he was a member of the firm which was doing business on sound principles, meeting its obligations and fulfilling its contracts, and it may be assumed that those customers who came to the office knew Mr. Somers personally, and that they understood that he was the active manager of this prosperous business; and, while it is true that the transactions were in the name of the firm of Geo. D. Harris & Co., and this firm technically had the high credit given it by the commercial agencies, it cannot be said with any fair degree of intelligence that the active partner in a firm of this character is unknown or without credit in the business in which he is engaged, after long years of actual contact with the people with whom he trades, during all of which time he is held out prominently as a partner. Geo. D. Harris might just as well say that he had no standing or credit with the coal trade, for it was not Geo. D. Harris but Geo. D. Harris & Co. who had the technical standing, but if Mr. Harris should attempt to deny that he had standing and credit with the people with whom his firm has been doing business for the past 20 years, more or less, he would hardly be credited with sincerity.

It is evident that just prior to the 1st of January, 1911, the plaintiff was in much closer touch with the business of the firm than Mr. Harris. He knew that he was better acquainted with the business and with the trade than Mr. Harris; he testifies that as far back as November, 1910, he had his first conversation with Mr. Harris about dissolving the partnership; that:

"I went to Mr. Harris and told him that the condition of affairs as they nad been could not exist any longer, so far as I was concerned; that they must pay me a salary, inasmuch as I was devoting my entire time to the affairs of the company, and had been for years, while Mr. Harris was not doing so; that they must pay me a salary. Mr. Harris said, 'I would have to consider that I was no good; that my services were worth nothing to the firm.' He asked me if I didn't think his services were worth as much as mine, and I said 'No.'"

And soon after this the plaintiff tells us that the notice of dissolution was prepared at the Albany office and submitted to Mr. Harris, and by him approved, and this is the notice as it appears in the record:

"The firm of Geo. D. Harris & Co., doing a wholesale coal business in the Albany Trust Company Building, Albany N. Y., No. 1 Broadway, New York City, and Oliver Building, Pittsburg, Pa., will be dissolved by mutual consent on January 1, 1911. All existing contracts will be completed by the old firm of Geo. D. Harris & Co. The New York office will be carried on by Geo. D. Harris & Company, Incorporated, and the Albany office by Henry W. Somers."

Can there be any doubt that in this dissolution by mutual consent the parties, with a full understanding of all the facts, made their own division of the good will of the business; that the plaintiff, of his own

choice, took the Albany office—the record office—with which he had been identified from the first, and gave to Mr. Harris the New York office, leaving the Pittsburg office to be discontinued? Is there any doubt that Mr. Somers in December, 1910, in formulating this notice and in bringing about the dissolution, believed that as a well-known and active partner in the firm of Geo. D. Harris & Co. he would be prepared to reap all of the benefits to which he was entitled? Did he not, upon the facts as they then appeared, have rather the best of the bargain in the matter of good will? He was taking over the older and the better established office, the office containing all of the records of the firm which was about to disappear from the business world, and the office which had been under his personal charge since 1895, while he was leaving to Mr. Harris (or rather to his corporation) the New York office established in 1900, and which appears to have been little more than desk room at No. 1 Broadway. There is absolutely no evidence that Mr. Somers lacked anything essential to the carrying on of his business; that he had any difficulty in getting credit or in holding onto the customers which he had come to know through his connection with the firm of Geo. D. Harris & Co. From all that appears in the evidence he may have had all of the customers of the old firm, each of whom was notified of the dissolution and of the distribution of the good will of the firm, showing Mr. Somers, one of the partners, as continuing the Albany office. The change was purely voluntary on his part; he appears to have elected to discontinue business as Geo. D. Harris & Co., and to take up the business at the old office of that company in his own name, telling each of his old customers of such change, and just how he can be permitted, in a court of equity, to now claim against the defendant because a corporation, taking on the name of Geo. D. Harris & Co., and giving notice in its stationery that it is incorporated, and publishing the names of its officers, has conducted a similar business in the city of New York does not occur to us. The business is that of a wholesale dealer in coal; largely that of a broker, and Mr. Somers, having had all the advantages of the acquaintance growing out of his active management of the business for many years, during all of which time he has been publicly proclaimed as one of the partners of the firm of Geo. D. Harris & Co., and having been permitted to give notice to each of the firm's customers, and to the public generally, of the fact that he is continuing the business at the Albany office, he is in no better position to complain of the defendant taking the good will than the defendant is of charging him with having appropriated the good will to his own use, for he had all of the advantages of an established business with which he was identified as a partner and which was builded up by Geo. D. Harris & Co., and he has told the customers of that firm that he has displaced Mr. Harris, and is conducting the business at the old stand in Albany. If the firm name had been Harris & Somers, and the name of George D. Harris and of Henry W. Somers had appeared upon the letter heads under exactly the same circumstances, and the plaintiff had consented that a corporation known as Harris & Somers should have the New York office, while he retained the Albany office, conduct-

ing it under the name of Henry W. Somers, no one would have thought of suggesting that there was any element of good will surviving for which Mr. Harris could be charged; and the matter is not different because the firm name happened to be Geo. D. Harris & Co., where it appears that Mr. Somers' name was always put forward as constituting one of the members of the firm. It was in fact Harris & Somers who constituted the firm; that fact was known to every customer of the firm if he took any pains to know with whom he was dealing, for it appeared upon all of the stationery, and Mr. Somers was the man who managed and conducted the affairs of the company during the last eight years of its existence, if he is to be credited. While good will in a sense attaches to a firm name, it more literally attaches to the personality of the men who make up the firm, where they are actively identified with the business; and, if Mr. Somers, at the end of the eight years, in which he claims to have practically controlled the affairs of the company, did not retain the good-will value of the business under the circumstances disclosed, he could not have contributed much to it during the time of his management, and equity ought not to give him the benefit of a value which he did not help to create while thus in charge.

The more the matter is analyzed the more it appears that there was an implied agreement between the members of this firm to divide the good-will element of this business, and that Mr. Somers was at least in a position to get by far the best end of the bargain. Of course the parties did not call the matter under consideration good will; it did not occur to either of them that in dissolving a partnership there was any good will involved, but the practical construction of what they did leads inevitably to the conclusion that they took into consideration the desirability of each one continuing in the same line of business in which each of them had achieved some considerable degree of success, and that they mutually agreed upon a division of the opportunities which belonged to them as a firm, by the plaintiff continuing the business of the Albany office, with whatever advantages had come to it through the business of the firm, while the defendant was to make the most of his opportunities through the New York office. He was at perfect liberty to organize a new partnership with his sons or any one else, and do business as Geo. D. Harris & Co., for the plaintiff had voluntarily relinquished the use of that name, and had elected to do business at the old stand under a new name, with all of the advantages which accrued from the possession of the names and the personal acquaintance of the wholesale coal trade, and he had an equal right to incorporate; and when he changed the form from "Geo. D. Harris & Co." to "Geo. D. Harris & Company," and gave notice in his stationery that it was incorporated, and that the officers consisted of himself and his sons, instead of the members of the old firm, he clearly excluded himself from all that part of the good will which attached to Mr. Somers and his relations to the firm. He who seeks equity must do equity, and before Mr. Somers is entitled to any relief from the defendant other than an accounting for the property of the firm set forth in the complaint, he should account to Mr. Harris for the

good will which he took in connection with the old and established Albany office, with its records and its associations with the wholesale coal trade long before the New York office was established.

We are satisfied from the whole of the evidence that the profits for the last few years of the business came not from the business itself, but from favorable investments previously made. The evidence does not show any value to the good will.

The court disapproves of the findings of fact numbered 5, 6, 10, 14, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29.

The judgment, in so far as appealed from, should be reversed, with costs, and the order granting an additional allowance should be reversed, with costs, and a new trial granted.

HOWARD, J., concurs. KELLOGG and LYON, JJ., concur in the second and third grounds. SMITH, P. J., concurs on ground last stated.